[Ashtabula (7th) Circuit Court, September Term, 1908.]

Burrows, Laubie and Cook, JJ.

JOHN O'BRIEN v. STATE OF OHIO.

ASSAULT WITH INTENT TO MAIM.

> Where an assault is committed by a blow upon the head with a blunt instrument under circumstances evincing an intent to permanently disable the person assaulted in respect to the use of some member of the body necessary in defense of his person or to annoy his adversary, the party committing the assault may be convicted of an assault with intent to maim.

[Syllabus approved by the court.]

ERROR to Ashtabula common pleas court.

**Boyd, Marvin & Lawyer,** for plaintiff.
**C. L. Taylor,** prosecuting attorney, for defendant.

## COOK, J.

John O'Brien was convicted, under Sec. 6819 Rev. Stat., of the crime of assaulting George Ryle with a dangerous weapon with the malicious intent to maim and disfigure. The indictment contained three counts: The first of assault with intent to kill and the second and third of assault with intent to maim and disfigure; the last two counts being substantially the same. The jury returned a verdict of not guilty on the first and third counts and guilty on the second count. He was sentenced by the court to the penitentiary and the case is now before us on error.

The circumstances as detailed in the evidence are briefly these:

A construction firm was putting up some structural steel work at Ashtabula Harbor, and the work was being done with non-union labor which was objectionable to union men; and the union at Cleveland sent several men to the harbor to look after the interests of the union men and to see if the nonunion men could not be induced to quit working. These special agents of the union were assisted by a number of other men at the harbor, so that there were quite a number of men, union and non-union on each side.

As ordinarily in cases of this character the controversy became quite hot and much bad blood was aroused. About six o'clock in the

morning when the assault took place, Ryle was going to work and
passed diagonally across the corner of two streets when four men came
in the opposite direction, coming from behind a small building, and
met Ryle about half way across the intersection of the streets. Each
of the four, or at least some of them, had a piece of gas pipe about
eighteen inches long and one inch in diameter, covered with heavy
brown paper. They were closely huddled together, and one of them
struck Ryle over the side of the head with his weapon making a serious
and dangerous wound, but not of sufficient force to fracture the skull.
The blow felled Ryle to his knees when he pulled his revolver and
shot one of his assailants dead; the other three immediately fleeing in
different directions. There is no evidence of any threats being made
by O'Brien or by either of the other three.

Two questions of error are made before us and are strenuously
relied upon by counsel for plaintiff in error. First, that the evidence
does not sufficiently show that O'Brien was one of the parties that
committed the assault. Second, that the evidence wholly fails to show
that the assault was made with the malicious intent to maim or dis-
figure. We have examined the evidence and we think the jury did
right in finding from the evidence that O'Brien was one of the parties
that committed the assault. The judgment therefore cannot be reversed
upon that ground. The second ground of error presents a question of
much more difficulty; and that is, whether the malicious striking of a
person upon the head with a blunt instrument of the character and
under the circumstances shown in the evidence is sufficient to show a
malicious intent to maim or disfigure, where the head only is injured.
It must be conceded that whatever may be the holding in the different
states—and the decisions are directly contrary—in our own state in
order to convict of an assault with the malicious intent to maim or
disfigure the act must be done with intent to permanently injure one
of the members of the body specifically set forth in Sec. 6819 Rev. Stat.,
and to maim the assault must be made with the malicious intent to
injure a member that may be used in the defense of the person, or to
annoy an adversary.

*State* v. *Johnson,* 58 Ohio St. 417 [51 N. E. Rep. 40; 65 Am.
St. Rep. 769], the first section of the syllabus in that case is as follows:

"1. Maim and mayhem are, at common law, equivalent words,
and mean the same thing; therefore, a count in an indictment charging
the defendant with maliciously biting the ear of another with intent
to maim, cannot be supported as to the particular intent charged, as
the biting of an ear does not in law constitute a maiming."

O'Brien v. State.

On page 423 in the opinion it is said:

"There is no question, we think, but that maim as a noun, and mayhem are equivalent words, or that maim is but a newer form of the word mayhem—the difference being in the orthography and not in the sense. Webster's Unabridged Dictionary: 'Maim,' as a noun, is there defined the same as mayhem: 'The privation of the use of a limb or member of the body by which one is rendered unable to defend himself or to annoy his adversary.' This is the definition of mayhem at common law. 1 East, P. C. 393; 1 Wharton, Crim. Law Sec. 581. Hence the verb 'to maim' is accurately defined in Anderson's Law Dictionary, as follows: 'To commit mayhem.'"

Again, on page 425, it is said:

"If the member be not one of use to the person in defending himself, an injury to it cannot be said to have been done with intent to maim."

In this case it is not claimed by the state that there was any intent to disfigure on the part of O'Brien; neither could there be, as there is nothing tending to show such intent by the injury or by any circumstance in the case.

The question then arises, is the evidence sufficient to show, under the law as laid down in *State* v. *Johnson, supra,* an intent to maim; that is, such privation of the use of a limb or other member of the body by which one would be rendered less able to defend himself or to annoy his adversary. The injury in this case produced no such effect, so that no implication of fact or law arises that the accused intended that which his act in fact produced, and a specific intent must therefore be shown from the manner of inflicting the blow, the part of the body struck and the circumstances under which the injury was inflicted.

Intent is a mental state and therefore very difficult of proof. The only manner in which it can be proven is by the circumstances of each particular case, and if the circumstances are of such character as to satisfy the triers of the facts beyond a reasonable doubt not only that the act was done by the defendant, but that it was done with the felonious intent charged in the indictment, that is sufficient.

The rule is well stated by Elliott, Evidence Sec. 2841:

"Intent—Inferred from circumstances. While it is incumbent upon the state to prove the intent, yet the law, recognizing the difficulty of proving mental states, does not require proof of such intent by direct evidence, but it may be established by proof of such facts and circumstances from which the intent may naturally or reasonably be

inferred.  One court very aptly stated the rule thus: 'But it is gen-
erally true that the state is not expected and cannot be required to
make proof of felonious intent, as a fact, by direct and positive evi-
dence; for as a general rule, men who do or commit acts do not pro-
claim in public places the intent with which such acts are done.  If the
state were required to make direct and positive proof of the felonious
intent which characterizes the act done as a public offense, the result
would be that many persons, charged and guilty of public crimes,
would go acquit 'unwhipt of justice.'  Therefore all that the state is
required to do in such cases is to introduce such evidence on the trial
of the cause as will satisfy the triers of the facts, whether court or jury,
beyond a reasonable doubt, not only that the act was done by the de-
fendant, but that it was done with the felonious intent charged in the
indictment.''

The jurors and the trial judge were so satisfied in this case.  Were
they in error in being so satisfied?  We think not.  Here was a con-
tention between two conflicting parties of large numbers.  The question
between the factions was which should do the work of construction,
union labor or nonunion labor.  There could be no reasonable object in
killing Ryle; it would not accomplish their purpose and at the same
time upon apprehension be attended with severe penalty.

The main object, no doubt, was to disable Ryle and not kill him.
This is shown by the weapon used and the manner of its use.  It was
wrapped with heavy paper so as to blunt the force of the blow.  Why
use an eighteen-inch piece of gas pipe so protected if the main inten-
tion was to kill?  Why not have used a revolver or other gun at a safe
distance, at some secluded point; why go four together attracting
attention leading necessarily to detection, apprehension and con-
viction?  But it is said they did not maim Ryle.  True, but what
would have happened had he not shot one of the number down?  They
were there to disable him; teach him a lesson, and had it not been for
his revolver, no doubt numbers of blows would have fallen upon his
arms, limbs and other members of his body.  Who can say, under such
circumstances, the assault was not made for the purpose of maiming?

The case of *Ridenour* v. *State*, 38 Ohio St. 272, is a case quite
similar to the one we are considering.  Ridenour was convicted of
shooting with intent to maim.  He shot Montgomery in the trunk of
the body near the navel; a nerve was destroyed by the bullet in its
course and paralyzed his right leg.  In the second paragraph of the
syllabus it is held:

"2.  Where one shot another in the trunk of the body, and the

O'Brien v. State.

result was to produce paralysis of a leg, causing a permanent disabling of that member, a verdict of guilty of shooting with intent to maim is supported by sufficient evidence. The accused might fairly be presumed to have intended the actual and natural result of his unlawful act.''

True, in that case an actual maiming took place and raised a presumption against Ridenour, but we think not stronger than the presumption raised by the circumstances in this case.

On page 274 in the opinion it is said:

''It further appeared, however, that a nerve was destroyed by the bullet in its course, and that although the patient has recovered, his right leg is disabled by paralysis, from which it is said he will never, in all probability, recover. From this it seems that the result of the shooting was actually to maim. Can it be said that the verdict finding that the accused intended the result of his criminal act was not warranted? We think not. The law presumes all persons to contemplate the natural and probable results of their actions; and we cannot say that the natural and probable result of such an injury as this is not to cause the loss of the use of some important member of the body.''

Mark the closing sentence: ''The law presumes all persons to contemplate the natural and probable results of their actions; and we cannot say that the natural and probable result of such an injury as this is not to cause the loss of the use of some important member of the body.''

So a blow upon the head made under the circumstances shown in this case may be presumed to have been made with intent to cause the loss of the use of some important member of the body. Indeed, it is well settled by medical authority that a violent blow upon the head not fracturing the skull frequently does cause the paralysis of an arm or leg. American Text Book of Surgery, Principles and Practice of Surgery by De Costa.

The judgment of the court of common pleas is affirmed.

**Burrows** and **Laubie, JJ.,** concur.